IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 3:24-cr-00189 |
| | ) | |
| | ) | JUDGE CRENSHAW |
| DAVID AARON BLOYED | ) | |

## RESPONSE TO MOTION TO REVOKE THE ORDER OF DETENTION

COMES NOW the United States of America, by and through Thomas J. Jaworski, Acting United States Attorney, and the undersigned Assistant United States Attorneys, Joshua A. Kurtzman and Nani M. Gilkerson, and responds in opposition to David Aaron Bloyed's Motion to Revoke the Order of Detention (hereinafter "the Motion" or "Defendant's Motion"). Following Defendant's arrest in Texas on the charge currently before this Court of transmitting a threat in interstate commerce, in violation of Title 18, United States Code, Section 875(c), Defendant elected to proceed with a detention hearing in the Northern District of Texas. After a lengthy detention hearing, a magistrate judge in the Northern District of Texas ordered Defendant detained pending trial in this case. (*See* DE 25-1, Transcript of Detention Hearing (hereinafter, "Transcript"), at 86–89.) Prior to making that detention decision, the magistrate judge heard testimony from three separate law enforcement witnesses who recounted Defendant's criminal conduct both as it relates to the conduct charged in the Middle District of Tennessee and similar criminal conduct engaged in by Defendant toward law enforcement in Texas. The magistrate judge also reviewed 29 individual exhibits that detailed Defendant's threatening conduct toward law enforcement, the Davidson County district attorney, witnesses in an aggravated assault case currently pending in Davidson County Criminal Court, and Nashville business owners. After hearing this testimony and reviewing the evidence, the magistrate judge, found that "the Government has shown by clear and convincing evidence that there is not a condition or

1

combination of conditions that I could impose that would be adhered with that would reasonably assure public safety or the safety of any other person." (*Id.* at 88:25 – 89:4.) Accordingly, Defendant's sole rationale for revoking the Order, which is simply that the magistrate judge erred in his analysis of the factors articulated in Title 18, United States Code, Section 3142(g), should be rejected by this Court and Defendant should remain in custody pending trial.

## I. LEGAL STANDARD

After a person is ordered detained by a magistrate judge, the person "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). "Review of the Magistrate Judge's decision is *de novo*, 'although the district court "may conduct its review and base its decision on the evidence presented to the magistrate [judge] at the detention hearing."'" *United States v. Zapien*, 2014 WL 1028435, at *2 (M.D. Tenn. Mar. 17, 2014) (quoting *United States v. Stokes*, 2006 WL 3843589, at *1 (M.D. Tenn. Dec. 22, 2006)).

Under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq.*, the Government may move for pretrial detention of a defendant only in cases that fall into one of seven categories. 18 U.S.C. § 3142(f)(1)(A)-(E), (2)(A)-(B). Four categories focus on the nature of the offense charged, including whether the charged offense is a crime of violence. 18 U.S.C. § 3142(f)(1)(A), (B), (C), (E). One category focuses on a defendant's prior convictions. 18 U.S.C. § 3142(f)(1)(D). The other two categories involve cases that involve a serious risk of flight or cases involving obstruction of justice, witness tampering, or jury tampering. 18 U.S.C. § 3142(f)(2)(A)-(B). The Government has the burden to show by a preponderance of the evidence that a case falls into one of these categories. Once a case is found eligible for a detention hearing, the court must assess the appropriateness of release or detention by considering certain factors set forth in 18 U.S.C. § 3142(g).

"The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F. 3d 939, 945 (6th Cir. 2010); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").[1] Thus, a defendant may be detained pending trial only if the court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The facts used by the court to find that no combination of conditions will reasonably assure the community's safety must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). In other words, the Government must prove dangerousness to any other person or the community by clear and convincing evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). By contrast, the Government must prove risk of flight only by a preponderance of the evidence. *Id*.

In determining whether there are conditions of release that will reasonably assure a defendant's appearance and the safety of any other person and the community, the court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person;[2] (3) the history and characteristics of the person; (4) whether the defendant was on probation, parole, or other release at the time of the current offense; and (5) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

---

[1] Although release is the default position of the law under Section 3142, the default is in some circumstances modified by a rebuttable presumption set forth in the statute. Here, however, a rebuttable presumption for detention does not apply.

[2] "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt [on the pending charges]." *Stone*, 608 F.3d at 948. Notably, however, the weight of the evidence of dangerous can, in some cases, be enhanced by substantial weight of the evidence of guilt; this is because when the charges against a defendant themselves reflect dangerous conduct, evidence of guilt on those charges in some cases tends to reflect an ongoing danger to other persons or the community.

3

## II. EVIDENCE PRESENTED BY THE UNITED STATES AT THE DETENTION HEARING

At the Detention Hearing, the United States presented evidence that can be delineated into three separate sections. First, Lieutenant Derrick Young from the Waxahachie (Texas) Police Department testified regarding threats made by Defendant to him in September 2023. Second FBI Special Agent Angelo DeFeo testified about the Goyim Defense League, their activities and arrests in Nashville, and Defendant's threats directed towards District Attorney Glen Funk and others. Third, Frost (Texas) Police Chief Ernest Cavillo testified about a run-in with Defendant where Chief Cavillo was forced, by Defendant's actions, to physically restrain Defendant.

### A. Testimony and Evidence Presented Through Lieutenant Young

During the detention hearing, Lieutenant Young testified regarding a November 4, 2023, incident involving Defendant. During this incident, officers with the Waxahachie Police Department encountered Defendant outside the Waxahachie Civic Center where Defendant was passing out racist and antisemitic flyers while armed with a pistol. (Transcript at 9:13–17:19.) According to Lieutenant Young, people attending the gun show at the civic center complained about Defendant and his flyers but he refused to leave until Lieutenant Young threatened to arrest him for trespassing. (*Id.* at 10:9–13:1.) Defendant subsequently called the Waxahachie Police Department to file a complaint against Lieutenant Young. (*Id.* at 11:11–13:8.) Lieutenant Young then testified about a social media post made by Defendant describing their interaction where Defendant threatened that Lieutenant Young was "halfway to the Turner rope lift [list] and gets one more shot at being worth saving" and is "[h]alf way to the rope," implying that Lieutenant Young should be or is going to be lynched. (*Id.* at 15:2–16:21 (reading the entire post into the record).) Lieutenant Young testified that Defendant's social media post was shown to him by one of his supervisors and that he viewed Defendant's post as a threat. (*Id.* at 16:23–17:8.)

4

### B. Testimony and Evidence Presented Through Agent DeFeo

Agent DeFeo testified after Lieutenant Young and described the Goyim Defense League ("GDL") and the criminal conduct that led to Defendant being charged with communicating a threat in interstate commerce. Agent Defeo described GDL as "a conspiracy theory anti-Semitic hate group [comprised of] loosely affiliated individuals from all over the country that will utilize social media platforms to communicate with each other and then will do meet-ups in cities across the United States." (*Id.* at 21:5–9.) Agent DeFeo also explained that the GDL harasses Jewish people, espouses white supremacy, and has a stated goal of expelling all Jews from the United States. (*Id.* at 21:10–17.) Agent DeFeo then described how the GDL visits cities around the country to espouse their vile rhetoric and harass individuals based on their race, religion, or if individuals confront them and disagree with their rhetoric. (*Id.*)

Agent DeFeo testified that in July 2024, members of GDL were present in the Nashville area as part of their "Name the Nose Tour 6." (*Id.* at 21:21–23:7.) Agent Defeo then explained that members of GDL were protesting in downtown Nashville when a physical altercation occurred, and as a result, an individual known to be a GDL member, Ryan McCann, was arrested and charged in Davidson County with aggravated assault after hitting a bar employee repeatedly with a metal flagpole that had a flag with a swastika affixed to the top of it.[3] (*Id.* at 23:18–25:6.)

Open-source research revealed that following the arrest of Ryan McCann on July 14, 2024, a Telegram user bearing username "Schwetty Balls" (hereinafter, the "Telegram Account"), which was eventually attributed to Defendant, posted the following threats against Nashville and Davidson County District Attorney ("DA") Glenn Funk:[4]

---

[3] While not discussed at the detention hearing, McCann and other members of GDL also violently attacked another Nashville resident during the evening of July 13, 2024.

[4] All of the posts included in the Response to Defendant's Motion to Revoke the Detention Order were introduced as exhibits during the detention hearing held in the Northern District of Texas.





(*Id.* at 25:14-24.) Agent DeFeo testified that the "The Day of the Rope" is a frequently cited white-supremacist concept that originates from *The Turner Diaries*. (*Id.* at 34:13-21.) *The Turner Diaries* is a novel written by William Luther Pierce, a white nationalist, that depicts the violent overthrow of the United States government by white supremacists. (*Id.*) In the novel, the "Day of the Rope" describes the day when white supremacists engage in mass lynchings of purported "race traitors" such as journalists, politicians, law enforcement, and prosecutors. (*Id.*)

As outlined in the picture above, the threats posted by the user of the Telegram Account included a photograph of DA Funk with the caption "Getting the rope" and an emoji finger pointed towards DA Funk's image. The posts also included a photograph of a person hanging by the neck from a gallows, with the phrases, "The 'Rope List' grew by a few more Nashville jews today," and "Will you survive the day of the rope?"

Agent DeFeo also testified about other posts from the Telegram Account and a Gab account with an almost identical username, "Schwettyballs" (hereinafter, the "Gab Account"), also attributed to Defendant. (*Id.* at 29:9-20 (admitting Government Exhibits 1 through 29).) These posts included the following, in which Defendant expressed support for McCann, referred to Nashville as a "lying motherfucking jews," and threatened both the victim of McCann's assault and the owner of the bar that employed the victim:







### C. Testimony and Evidence Presented Through Chief Ernest Cavillo

Chief Ernest Cavillo then testified about an interaction with Defendant in May 2023 where Chief Cavillo had to physically restrain Defendant and take him to the ground. During this interaction, Defendant had placed antisemitic flyers on numerous vehicles, including Chief Cavillo's personal vehicle. (*Id.* at 63:9–64:7.) As Chief Cavillo went to remove the flyer from his vehicle, Defendant grabbed Chief Cavillo's wrist, on his gun side, and Chief Cavillo took

Defendant to the ground because he believed him to be a threat to his personal safety. (*Id.* at 64:12–65:13.) Chief Cavillo testified that Defendant, while lying on the ground, told Chief Cavillo "that if I didn't have my badge and gun on, he'd show me pain." (*Id.* at 65:9–21.)

### D. Defendant's Evidence Presented at the Detention Hearing

Defendant did not present any witnesses during the detention hearing but did proffer to the magistrate judge that Defendant's wife would be willing to serve as a third-party custodian. (*Id.* at 70:12–71:18.)

### E. The Magistrate's Detention Decision

In ordering, Defendant detained pending trial, the magistrate judge fairly balanced all of the factors present here and still concluded that Defendant should remain detained. In his oral ruling, the magistrate judge outlined that Defendant "has no significant criminal history" and also "has a stable residence." (*Id.* at 87:6–8.) The magistrate judge then concluded that Defendant had crossed the line based on the threat directed to the Nashville District Attorney and "statements that cross the line that are not protected by the First Amendment include things like encouraging intimidation of witnesses or victims or retaliation or true threats," which Defendant repeatedly did related to GDL's activities in Nashville. (*Id.* at 87:1–25.) The magistrate judge concluded that Defendant had engaged in the intimidation of witnesses and victims in at least four separate instances. (*Id.* at 88:1–5.) After recounting how Defendant threatened numerous individuals in Nashville, the magistrate judge found that "the Government has shown by clear and convincing evidence that there is not a condition or combination of conditions that I could impose that would be adhered with that would reasonably assure public safety or the safety of any other person." (*Id.* at 88:25–89:4.)

### III. THE EVIDENCE ABOVE DEMONSTRATES THAT THE UNITED STATES MET ITS BURDEN

The evidence outlined above, which was thoughtfully considered by a magistrate judge in the Northern District of Texas, established by clear and convincing evidence that "that no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B). All of the factors to be considered by the Court weigh heavily in favor of detention.

#### A. Nature & Circumstances of the Offense

The first factor the Court must consider is the nature and circumstances of the offense charged, which weighs heavily in favor of detention. Here, Defendant is accused of communicating threats to the elected District Attorney of Nashville and Davidson County and conducting an online campaign aimed at harassing and intimidating local Nashville residents, witnesses, and victims with whom he disagrees. Defendant continued on his destructive mission by sharing with his violent fellow GDL members the address of where they might be able to find a witness to a GDL member's aggravated assault.

Irrespective of how Defendant subjectively may view his own actions, his conduct objectively reflects threats to elected officials, law enforcement officers, and witnesses. Defendant's threats led the Metropolitan Nashville Police Department and the Federal Bureau of Investigation to launch an investigation to uncover his identity so the safety of the elected District Attorney could be assured. Expressing disagreement with public officials certainly is permissible. But launching a campaign of threats and social media posts tied to strong implications of threats to the personal safety of public officials and private citizens is impermissible and very concerning. The Court should not minimize the seriousness of the circumstances of this offense and the Government contends that this factor weighs heavily in favor of detention.

## B. The Weight of the Evidence of Dangerousness

As noted in a footnote above, "[t]his factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt [on the pending charges]." *Stone*, 608 F.3d at 948. Here, the Court notes that the weight of the evidence (of dangerousness, which happens in this case to overlap substantially with evidence of guilt on the pending charge) in this case is particularly strong because the alleged conduct is largely preserved by social media posts and clearly demonstrates that Defendant has engaged in a pattern of behavior that harassed victims and witnesses and threatened an elected official in Nashville. And although Defendant argued that his posts should be collectively viewed as First Amendment protected speech, the current record reflects that Defendant's posts urged violence against others, encouraged his fellow GDL members to lynch an elected official, and led to the opening of state and federal criminal investigations—something mere hot air would not do. And as outlined above, Defendant's course of conduct creates a significant risk that Defendant will threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate prospective witnesses in this case. Therefore, the weight of Defendant's dangerousness, specifically with respect to individuals identified in Defendant's social media posts, is heavy.

## C. The History and Characteristics of the Defendant

In determining whether there are conditions of release that will reasonably assure the safety of any other person and the community, the Court must take into account Defendant's history and characteristics, "including (A) the [defendant's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning appearance at court proceedings, and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of

11

sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(A), (B). Testimony at the hearing outlined Defendant's history of defying and threatening law enforcement officers and his desire for a police lieutenant to be lynched. Moreover, the recording of Defendant during his transport to the local jail after his arrest, portions of which were played at Defendant's detention hearing, evidences a significant break between reality and a world consisting of a vast array of purported conspirators against whom Defendant appears to genuinely believe he must fight.[5] Although Defendant was not on probation, parole, or supervised release at the time he committed the offense, Defendant continued to weaponize the Internet by making posts targeting Nashville residents and an elected official. Accordingly, this factor also cuts in favor of detention.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

There is very substantial evidence that Defendant poses a danger to others. The Court should be gravely concerned about the physical safety of the District Attorney who was threatened with violence for merely doing the job Nashville residents elected him to do. Defendant is part of a nationwide network of white supremacists who are prone to engage in violence, which was evidenced on at least three occasions during their tour through Nashville. In his motion, Defendant has failed to explain how his proposed release plan mitigates the risk to witnesses, victims, and anyone else Defendant believes is at odds with his worldview—or how it effectively deters or prevents Defendant from engaging in the same conduct if he is released. Even if the Court could craft conditions of release that could effectively deter or prevent Defendant from continuing to engage in the same sort of conduct that led to the charges in this case, Defendant's overwhelming lack of respect for elected officials, law enforcement, and his fellow citizens is such that he could not be relied upon to comply with any conditions of release set by this Court. Accordingly, the

---

[5] The United States will provide a copy to the Court of the defendant outlining his extreme views whereby he is in an existential fight against every non-white or Jewish citizen in the United States.

United States requests that the Court deny Defendant's Motion and order him detained pending trial.

### E. Serious Risk of Threatening, Injuring, or Intimidating a Prospective Witness under 18 U.S.C. § 3142(f)(2)(B)

Detention is also available in any case where there is "a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B). There is strong evidence that Defendant weaponized the Internet to launch a campaign of social media posts aimed primarily at an alleged victim of a violent crime perpetrated by a fellow GDL member. Defendant posted a potential address of this victim and encouraged his fellow GDL members to commit acts of violence against him. The content of these posts speaks for itself, and there is every reason to conclude that Defendant aimed his ire at causing fear in and/or intimidating this victim and the District Attorney whose office charged Defendant's compatriot. As such, detention pending trial is appropriate as a serious risk exists that Defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate prospective witnesses.

## CONCLUSION

For these above-stated reasons, the United States urges the Court to find, as the magistrate judge in the Northern District of Texas did, that the Government has met the applicable burden (by clear and convincing evidence) to detain Defendant based on dangerousness and the inability of any condition or combination of conditions of release to adequately mitigate his dangerousness.

Respectfully submitted,

THOMAS J. JAWORSKI
Acting United States Attorney

By:    *s/ Joshua A. Kurtzman*
JOSHUA A. KURTZMAN
NANI GILKERSON

Assistant U. S. Attorneys
716 Church Street - Suite 3300
Nashville, Tennessee 37203-3870
Telephone: 615-401-6617

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and accurate copy of the foregoing has been served on opposing counsel via the CM/ECF electronic delivery system on this the 22th day of November, 2024.

                                          *s/ Joshua A. Kurtzman*
                                          JOSHUA A. KURTZMAN
                                          Assistant U. S. Attorney