IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:24-cr-00189 |
| | ) | |
| DAVID AARON BLOYED | ) | JUDGE CRENSHAW |

**UNITED STATES' SUPPLEMENTAL RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY FROM DISTRICT ATTORNEY GLENN FUNK**

COMES NOW the United States, by counsel, and respectfully offers this Supplemental Response to the defendant's Motion in Limine. The defendant filed a Motion in Limine to Exclude Testimony by Glenn Funk "Regarding Perception of Threat," Docket Entry 45, arguing that this testimony is not relevant and could confuse the jury. (DE #45, Mot. at 5, 8.) The Sixth Circuit has examined this issue in similar contexts and, like nearly every other circuits around the country, has permitted the introduction of testimony from the victim on their perception of and reaction to the threatening communication. Accordingly, the United States asks this Court to deny the defendant's motion to exclude testimony from the victim in this case regarding his perception of the threatening communication.

    a.   Government's Burden of Proof

Sixth Circuit Pattern Jury Instructions, incorporating Supreme Court decisions like *Elonis v. United States*, 575 U.S. 723 (2015) and its progeny, outline what the United States must prove to convict a defendant of communicating a threat in violation of 18 U.S.C. § 875(c). The Sixth Circuit dictates that there are four elements to this offense: (1) the defendant knowingly transmitted a communication; (2) the communication contained a threat to injure a particular person; (3) the defendant transmitted the communication for the purpose of making a threat or knowing the communication would be viewed as a threat; and (4) the communication was transmitted in

interstate commerce. *See* Sixth Circuit Pattern Jury Instructions, *available at* https://www.ca6.uscourts.gov/sites/ca6/files/documents/pattern_jury/pdf/Chapter%2018_0.pdf. The pattern instructions then further define the term threat as "a statement that is a serious expression of intent to inflict bodily harm on a particular person that a reasonable observer would perceive to be an authentic threat." *Id.*

      b. <u>*United States v. Wooten* Dictates That the District Attorney's Perception of the Threat is Admissible.</u>

In *United States v. Wooten*, 689 F.3d 570 (6th Cir. 2012), the Sixth Circuit examined whether a victim's perception of a threat was admissible. In *Wooten,* the Sixth Circuit was considering "whether an ordinary person in the teller's position could reasonably infer a threat of bodily harm from the defendant's acts." *Id.* at 577. The Court recognized that a teller's impression of alleged intimidation was an objective test and stated that the "presence or absence of the tellers fear is by no means the only factor to be considered—indeed, it cannot be dispositive or even the focus of the analysis—when viewed alongside other contextual evidence, such testimony may be useful to corroborate or bolster a court's broader evaluation of what a reasonable person's response would have been under the same circumstances. *Id.* at 576-577. The Court found that "[w]hile ... the test for intimidation is essentially an objective one, evidence that the teller felt threatened is probative of whether a reasonable person would have been afraid under the same circumstances." *Id.* at 577 (citing *United States v. Gilmore*, 282 F.3d 398, 402 (6th Cir.2002)). The Court also went on to note that their conclusion was consistent with other circuits "that have long permitted some consideration of a victim's perceptions and state of mind in similar contexts that rely on an objective, reasonable-person standard." *Id.* (citing approvingly *United States v. Alaboud*, 347 F.3d 1293, 1298 (11th Cir.2003) (citing supporting precedent from other circuits and holding that, even though an objective standard applies to the determination whether a defendant transmitted a threat

2

to injure another in violation of 18 U.S.C. § 875(c), testimony concerning a victim's personal belief that the defendant's words were a threat was "relevant in the inquiry of whether a reasonable person would perceive the statements as a threat")).

The Sixth Circuit rationale in *Wooten* applies equally in this case. Testimony from the District Attorney, or any other fact witness, is certainly not dispositive here as the jury will be instructed that it is there duty to determine whether the Defendant's social media post was a true threat. However, the perception of the threat by the individual targeted is certainly relevant as it is probative of whether a reasonable person would have viewed it as a threat under the same circumstances. Accordingly, the Court should follow Sixth Circuit precedent, as articulated in *Wooten*, and permit the testimony of the District Attorney regarding his perception of the threat.

    c. <u>Other Sixth Circuit Cases Where Victims Testify Regarding Their Perception of the Threat</u>

On numerous other occasions in the Sixth Circuit, victims have testified regarding their perception of a threatening communication at trial. The Sixth Circuit has never deemed this sort of testimony as inappropriate or inadmissible. Instead, the Sixth Circuit has cited to this sort of testimony as evidence of the defendant's guilt that was properly considered by the jury. In *United States v. Hagar*, 822 F. App'x 361 (6th Cir. 2020), numerous fact witnesses testified regarding their perception of the defendant's threatening communications. Hagar was charged with cyberstalking and two counts of making a threatening communication and, at trial, the security director for the victim's employer testified that he monitored Hagar's emails and described his perception that "the content of the emails as escalating from 'insulting to harassment to threatening.'" *Id.* at 366. The Sixth Circuit referenced that at least five victims testified (identified by their initials (C.B., R.D., M.M., J.R., and R.G.) and explained their reactions to the threatening communications which included buying a firearm, hiring additional security personnel, installing

3

security systems, and other actions they took based on their perception of the threating nature of the defendant's messages. *Id.* at 364, 367.

Likewise, in *United States v. Dodson*, No. 22-3998, 2024 WL 712494, at *2 (6th Cir. Feb. 21, 2024), the victim testified that the defendant's threatening communication, "caused her to fear for her safety" and that her assailants prior abuse, "caused her to believe that [the defendant] was capable of carrying out his threats." Moreover, law enforcement witnesses also testified regarding the "fear and agitation" experienced by the recipient of the defendant's threatening communications. *Dodson,* 2024 WL 712494, at *3. In another recent case, a district court allowed testimony from a representative of an organization that received threatening communications who testified that the defendant's "actions forced the [targeted organization] to issue a press release about the data breach and attempt to contact every person on the registry [and that] . . . [m]any of the persons reached . . . were 'extremely fearful' and 'expressed a lot of anxiety' [and] . . . [s]ome feared losing their jobs, and others became 'depressed or were suicidal because of this [the defendant's threats].'" *United States v. Farrera-Brochez*, 827 F. App'x 561, 564 (6th Cir. 2020). Thus, Sixth Circuit precedent comports favorably with the *Wheeler* court that found when, "[d]etermining whether a statement amounts to a true threat requires 'a fact-intensive inquiry, in which the language, the context in which the statements are made, as well as the recipients' responses are all relevant.'" *United States v. Wheeler*, 776 F.3d 736, 743 (10th Cir. 2015) (citing *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1167–68 (10th Cir.2009); and *United States v. Magleby*, 241 F.3d 1306, 1311 (10th Cir.2001) (finding that the "reaction of the recipient of the alleged threat" is relevant in determining whether a reasonable person would interpret a statement to be a threat)).

In this case, it is highly relevant for the jury, as the factfinder, to hear testimony regarding the District Attorney's perception of the threat at issue in this case. The jury would rightly expect

4

to hear testimony from the District Attorney on whether he learned of this threat, his thoughts regarding the threat, the context in which he understood the threat, the circumstances surrounding the threats, and whether this threat was unique based on its connection to his office's official action in charging a member of the Goyim Defense League with a felony. Testimony from the District attorney will allow the jury to judge for itself whether a reasonable person would view the defendant's communication as a threat. As the Ninth Circuit articulated, "[a]lleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners." Orozco-Santillan, 903 F.2d at 1265. Here, testimony from the District Attorney, and other individuals familiar with the threat and factual circumstances related to the threat, will place the defendant's threat in the appropriate factual context, provide significant insight into the events surrounding the defendant's threat, and outline the reaction to the threat by the District Attorney, local law enforcement, and federal law enforcement.

During the recent status conference, the Court asked the United States to look at three cases to see if they were relevant to this issue: (1) *United States v. Howard*, 947 F.3d 936 (6th Cir. 2020); (2) *United States v. Hoff*, 767 F. App'x 614 (6th Cir. 2019); and (3) *United States v. Killingsworth*, No. 21-3028, 2022 WL 294083 (6th Cir. Feb. 1, 2022). *Hoff* and *Killingsworth* involved defendants who pled guilty and appealed various issues, none of which involved the testimony of witnesses regarding their perception of the threat. In *Howard*, the defendant was convicted at trial, but it does not appear that the target of his threatening communication testified. However, the Sixth Circuit did affirm the district court's instruction that read, "[i]n evaluating whether the communication contained a, quote, true threat, close quote, you should consider *whether in light of the context* a reasonable person would believe that the statement was a serious expression of an intention to inflict bodily injury and whether the statement was made for the purpose of furthering some goal through the use of intimidation." *Howard,* 947 F.3d at 946 (emphasis added). The

5

United States asserts that the *context* provided by the District Attorney's testimony is relevant and should be permitted.

    d. <u>Every Circuit to Evaluate This Issue Agrees That the Victim's Perception of the Threat is Relevant.</u>

In a multitude of districts, courts have relied heavily upon evidence of recipient reaction in determining whether a statement constitutes a true threat. *See*, e.g., *United States v. Nishnianidze*, 342 F.3d 6 (1st Cir. 2003) (holding that the fact-finder may consider the effect of the statement on the recipient); *United States v. Fulmer*, 108 F.3d 1486, 1500 (1st Cir. 1997) ("[A]lthough the proper standard is what a person making the statement should have reasonably foreseen, we find that evidence of the recipient's reactions is relevant to that inquiry."); *United States v. Davila*, 461 F.3d 298, 305 (2d Cir. 2006) (explaining that the fact that prosecuting office's employees, who found baby powder, initiated a full-scale emergency response relevant to fact that correspondence was true threat); *United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994) ("In making this determination, proof of the effect of the alleged threat upon the addressee is highly relevant."); *United States v. Roberts*, 915 F.2d 889, 890-91 (4th Cir.1990) (holding that evidence of recipient's state of mind and actions taken in response are relevant); *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001) (explaining that statement is a true threat if recipient placed in fear of bodily harm); *United States v. Saunders*, 166 F.3d 907, 913 (7th Cir. 1999) (holding that Seventh Circuit "treats as relevant evidence both the victim's response to a statement and the victim's belief that it was a threat"); *United States. v. Schneider*, 910 F.2d 1569, 1571 (7th Cir. 1990) ("The fact that the victim acts as if he believed the threat is evidence that he did believe it, and the fact that he believed it is evidence that it could be believed and therefore that it is a threat. By this chain of inference, the relevance of the [recipient's] testimony is established."); *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990) ("Alleged threats should be considered in light of

6

their entire factual context, including the surrounding events and reaction of the listeners."); *United States v. Mabie*, 663 F.3d 322, 330-31 (8th Cir. 2011) (en banc) (distinguishing cases cited by defendant by noting, among other things, that the recipients were fearful after receiving communications); *Doe ex rel. Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002) (holding that a true threat "is a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another."); *United States v. J.H.H.*, 22 F.3d 821, 827 (8th Cir. 1994) ("Evidence showing the reaction of the victim of a threat is admissible as proof that a threat was made"); *United States v. Davis*, 876 F.2d 71, 73 (9th Cir. 1989) (Evidence of the "recipient's state of mind, as well as his actions taken in response to the letter, are highly relevant in establishing . . . whether the letter could reasonably be read as containing a threat of injury."); *United States v. Wheeler*, 776 F.3d 736, 745-46 (10th Cir. 2015) (holding that a reasonable person could interpret the defendant's statements as a serious threat, where those statements led recipients to arm themselves and their spouses, warn their pastor and children's teachers about the defendant, and contact police); *United States v. Magleby*, 241 F.3d 1306, 1311 (10th Cir. 2001) (stating that the trier of fact may consider victims' reactions to a cross-burning in evaluating the defendant's intent under § 241); and *United States v. Alaboud*, 347 F.3d 1293, 1298 (11th Cir. 2003) (holding that recipient's belief that statements are a threat is relevant in the inquiry of whether a reasonable person would perceive them as a threat).

Thus, evidence that the victim felt scared or threatened, as opposed to merely annoyed, would tend to support a finding that there was a true threat. In particular, courts have focused on precautions victims took in response to the threat, such as alerting the police, FBI, or other law enforcement officials. *See, e.g., United States v. Wheeler*, 776 F.3d 736, 745-46 (10th Cir. 2015) (noting that, while not dispositive, recipients armed themselves and their spouses and warned their children's teachers and pastors); *Doe ex. rel. Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d

616, 626 (8th Cir. 2002) (finding relevant the fact that victim cried and slept with the lights on for two nights after reading threatening letter); *Planned Parenthood of Columbia/Willamette, Inc. v. American Coal. of Life Activists*, 290 F.3d 1058, 1086 (9th Cir. 2002) (en banc) (explaining that fact that victim donned bullet-proof vest was relevant); *United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001) (holding that the fact that recipient felt apprehension was factor in true threat analysis); *United States v. Hart*, 212 F.3d 1067, 1072 (8th Cir. 2001), (holding that Ryder truck parked in driveway of reproductive health facility constituted a true threat in part because the clinic called police, who responded by evacuating the clinic as well as evacuating nearby homes and businesses and calling in bomb squads); *United States v. Spruill*, 118 F.3d 221, 228 (4th Cir. 1997) (considering fact that ATF agent was alerted at 6:30 in the morning in determining that statement was threat); *United States v. Roberts*, 915 F.2d 889, 891 (4th Cir. 1990) (relying in part on fact that Supreme Court Police and FBI became involved and viewed letter as threat); *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990) (considering fact that recipient was sufficiently alarmed to request protection from local sheriff as corroborative evidence of threat); *United States v. Hoffman*, 806 F.2d 703, 712 (7th Cir. 1986) (considering response of White House mail room and Secret Service to determine that statement was true threat). Courts have similarly cited changes victims have made to their routine or their internal operating procedures. *See United States v. Whiffen*, 121 F.3d 18, 22 (1st Cir. 1997) (holding that the fact that victims alerted person responsible for mail to handle packages differently was significant).

CONCLUSION

For the reasons outlined above, the Defendant's Motion in Limine (DE # 45) should be denied. Courts around the country have found the testimony of victims in threats cases, such as this one, to be relevant and probative of the elements the United States must prove to secure a

conviction. Accordingly, the United States requests that the Court deny the defendant's motion prior to trial.

>Respectfully Submitted,
>
>ROBERT E. MCGUIRE
>ACTING UNITED STATES ATTORNEY
>
>*s/ Joshua A. Kurtzman*
>JOSHUA A. KURTZMAN
>Assistant United States Attorney
>719 Church Street, Suite 3300
>Nashville, TN 37203
>615-736-5151 (phone)

9

Case 3:24-cr-00189   Document 62   Filed 04/21/25   Page 9 of 9 PageID #: 451