IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:24-cr-00189 |
| | ) | |
| | ) | Judge Crenshaw |
| DAVID AARON BLOYED | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION REGARDING PROPOSED
RULE 404(b) EVIDENCE**

The United States of America, by and through Robert E. McGuire, Acting United States Attorney, and Assistant United States Attorney Joshua A. Kurtzman, hereby files this response to Defendant's Motion to Exclude Certain Evidence (the "Motion") referenced in the Government's Rule 404(b) notice regarding other crimes, wrongs, or acts committed by the defendant that the Government may seek to introduce at trial.

**I.  Agreed Exclusion of Evidence:**

During the recently held status conference, the Court directed the parties to reach agreement where possible on the admissibility of certain evidence. In this vein, the United States concurs that the following social media posts objected to by the defendant will not be introduced at trial:

- The post introduced as Exhibit 1 at the detention hearing, which Agent DeFeo characterized as "a cartoon of a reptile in a Nazi SS uniform gassing a cartoon of a Jewish man." (Def.'s Mot. at 7.)

- The post introduced as Exhibit 2 at the detention hearing, which the government characterized as a "recruitment flyer for GDL," which consists of "an individual cutting off the head of a Jewish person" and the other "blaming Jewish people for a

myriad of different issues." (*Id*.) (using "GDL" as an abbreviation for Goyim Defense League).

- The post introduced as Exhibit 3 at the detention hearing, where the defendant appears to be tagging someone in a post and states "found another Jew." (*Id*.)

- The post introduced as Exhibit 4 at the detention hearing, in which the defendant posts an article and states, "In their own words not having Jews in power allows for increased National Pride and a reduction of non-White immigration." (*Id* at 7-8.)

- The post introduced as Exhibit 5 at the detention hearing, where the defendant reposts another user's post that states, "Fun fact: Nazis skeet shooting jewish babies was fabricated victimhood porn, but it doesn't have to be." (*Id.* at 8.)

- The post introduced as Exhibit 10 at the detention hearing, where the defendant references B.F. and the "ROPE LIST." (*Id.*)

- The post introduced as Exhibit 11 at the detention hearing, which depicts the "main page" of the defendant's Gab account (*Id.* at 8-9.)

- The post introduced as Exhibit 14 at the detention hearing, which depicts individuals allegedly involved in the physical altercation with Ryan McCann (*Id.* at 17.)

- The post introduced as Exhibit 19 at the detention hearing, where the defendant posts pictures of Jewish-American politicians with stars over their faces with the text, "BECAUSE IF AMERICANS KNEW WHAT JEWS HAVE DONE, ARE DOING AND INTEND TO DO, THEY WOULD BE SHOT." (*Id.* at 9.)

II. **Proposed Redactions:**

In his Motion, the defendant also requests that the government make three redactions to proposed exhibits. The United States asserts that redactions of statements made by individuals

communicating directly with the Defendant on social media are unnecessary for the reasons outlined below.

### III. Posts That Remain in Dispute:

The United States asserts that the following posts, which the Defendant objects to or believes should be redacted are permissible under the Rules of Evidence:

- The post introduced as Exhibit 24 at the detention hearing, a screenshot of an undated Telegram post where "Mr. Bloyed writes, 'We need to start a war between the jews in Nashville. This is what we do it on.'" (DE # 44, Def.'s Mot. at 9.)
- Third Party responses to Bloyed's posts, which include:
    - Exhibit 13, which is a screenshot that includes three separate posts including an individual responding to Bloyed and stating, "Just wait for the little greaser to leave work after his shift and then jump him." (*Id.* at 13-14);
    - Exhibit 16, which is a screenshot including a series of Gab posts by Mr. Bloyed from July 15 and 16, 2024. It includes two posts by other people that are directed at Mr. Bloyed. One of the posts is by person with the username "SuperUberman": "@Schwettyballs that mystery meat [s***] hybrid needs to be dealt with the old German way." (*Id.* at 15.); and
    - Exhibit 26, which is an undated Telegram post by Mr. Bloyed – "If we can't get that fucking mason/jew" – where a person with username "bad optics" has responded, "there's a possible easy way to do this, but i'm not going to share details in the public chat." (*Id.*)

- "Doxxing" Posts
    - Exhibits 8, 9, and 18 are screenshots of Gab posts by Mr. Bloyed from July 20, 2024, where he posts, "Hey Nashville ZOG [f******], you might find D[] if you check his dads house." In Exhibit 18, Mr. Bloyed posted a similar Google Maps image of a residence where D.B. may be found, this time with the text, "D[], hello there." Defendant's Motion describes these posts as "examples of doxxing, where someone publishes another person's private information as an act of revenge." (*Id.* at 15-16.)
- Exhibits 16, 20, and 28, which all outline animus towards D.B., the individual allegedly involved in a physical altercation with a member of the Goyim Defense League. (*Id.* at 17-18.)

### IV. <u>Legal Standard for 404(b) Evidence:</u>

Federal Rule of Evidence 404(b)(1) provides that evidence of "any other crime, wrong, or act" is not admissible when it is offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such "other act" evidence is admissible when it is offered "for another purpose, such as to proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Rule requires the prosecution give reasonable notice of the evidence to be offered and the permissible purpose for offering the evidence, "so that the defendant has a fair opportunity to meet it." *See* Fed. R. Evid. 404(b)(3).

The Sixth Circuit has explained that courts should use a three-step process for analyzing the admission of evidence pursuant to Rule 404(b), which involves reviewing: (1) whether the other acts actually occurred; (2) whether the act is admissible for a permissible Rule 404(b) purpose; and (3)

4

whether the acts' probative value was not substantially outweighed by the danger of unfair prejudice. *See United States v. De Oleo*, 697 F.3d 338, 343 (6th Cir. 2012).

In this notice, the Government identifies the anticipated evidence that it contends constitutes res gestae evidence but may implicate Rule 404(b). As discussed below, the Government does not concede that any or all of the evidence set forth herein actually requires the Rule 404(b) analysis—much of the evidence is properly admitted as direct evidence of charged conduct, and/or because it is inextricably intertwined with the charges in the case. However, out of an abundance of caution, the Government is providing notice of the defendant's conduct under Federal Rule of Evidence 404(b) as an alternative basis for admitting the evidence.

### V.    **The Underlying Charge and Case Background**

The sole count of the Indictment charges the defendant with communicating a threat in interstate commerce directed towards the District Attorney of Nashville and Davidson County, Tennessee, in violation of 18 U.S.C. § 875(c). Communicating a threat in interstate commerce requires proof of two elements: (1) the defendant knowingly sent a message in interstate or foreign commerce; and (2) the communication contained a true threat to kidnap or to injure a person. With respect to the first element, the threats communicated must cross state lines, but the Defendant's knowledge of the route of their threats to other states is not an element of the crime. *See, e.g., United States v. Houston*, 683 F. App'x 434, 438 (6th Cir. 2017) (affirming defendant's conviction under § 875(c) because the telephone system used to make the threats routed the call from Tennessee to a server in Louisiana, and back to Tennessee). With respect to the second element, in 2015, in the context of a case involving § 875(c), the Supreme Court decided *Elonis v. United States*, which clarified that to prove the intent element of § 875(c), the government must demonstrate that the defendant transmitted the communication "for the purpose of issuing a threat, or with knowledge

5

that the communication will be viewed as a threat." 135 S. Ct. 2001, 2012 (2015). The seminal Sixth Circuit post-*Elonis* case analyzing the communication of interstate threats is *United States v. Doggart*, 906 F.3d 506, 511 (6th Cir. 2018) ("The relevant question is whether a reasonable observer would take [the] words to be an authentic threat.").

In July 2024, members of the Goyim Defense League ("GDL") descended on Nashville for a two-week stop on their "Name the Nose Tour," which involves members protesting near synagogues and marching through the downtown area spouting vile, racist, and antisemitic propaganda. On July 14, 2024, a GDL member was arrested for aggravated assault in downtown Nashville after he struck a Middle District of Tennessee resident with a metal flagpole adorned by a flag containing a swastika. Following this arrest, GDL members, including the defendant David Aaron Bloyed, began commenting online about this arrest. On two separate occasions, the defendant posted to social media accounts attributed to him that Glenn Funk, the duly elected district attorney for Nashville/Davidson County, would be lynched or "get the rope" based on the arrest of the GDL member in Nashville.[1]

## VI. Legal Standard for Res Gestae Evidence

The Sixth Circuit "recognizes an exception to Rule 404(b) for res gestae evidence where the evidence consist[s] of those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Brown*, 888 F.3d 829, 836 (6th Cir. 2018). These "intrinsic acts" are different than "extrinsic

---

[1] "The Day of the Rope" is a frequently cited white-supremacist concept that originates from The Turner Diaries. The Turner Diaries is a novel written by William Luther Pierce, a white nationalist, that depicts the violent overthrow of the United States government and culminates in a race war that leads to the systemic extermination of non-whites and Jews. In the novel, the "Day of the Rope" describes the day when white supremacist rebels engage in mass lynchings of purported "race traitors" such as journalists, politicians, and women in relationships with non-white men.

6

Case 3:24-cr-00189    Document 63    Filed 04/21/25    Page 6 of 14 PageID #: 457

acts, which are those that occurred at different times and under different circumstances from the offense charged." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015). The Sixth Circuit has articulated that:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000).

Sixth Circuit precedent permits the government to "put the charges in the appropriate context" and recognizes that "defendants are not entitled to a 'sanitized' recounting of the facts, and [that] prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events." *United States v. Gibbs*, 797 F.3d 416, 422 (6th Cir. 2015). Similarly, because jurors may be less willing to credit a witness who is permitted to testify only in a truncated or "sanitized" manner, prosecutors may present evidence that provides a fuller picture of the charged offense. *See Old Chief v. United States*, 519 U.S. 172, 188, (1997) ("If jurors' expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party."). Res gestae evidence is also proper in the context of a witness explaining why they started investigating an individual. *United States v. Smith*, No. 22-3932, 2024 WL 196936, at *2 (6th Cir. Jan. 18, 2024) (holding that the admission of an uncharged drug overdose as *res gestae* evidence to provide the necessary background as to why the investigation began was proper). Likewise, evidence of unsavory associations that may involve criminal conduct is necessary to provide the proper context. *Id. (*"This res gestae evidence completes the narrative of the charged offenses and was properly admitted.") *(citing United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015) (explaining that "[t]he purpose of

background evidence is to put the charges in the appropriate context" and noting that "defendants are not entitled to a 'sanitized' recounting of the facts") (citation omitted)

## VII. The Social Media Posts in Dispute are Res Gestae Evidence the United States Intends to Introduce at Trial

At trial, the United States faces the burden of demonstrating that the defendant is the user, owner, and poster to the Gab social media account that communicated the charged threat. As such, the United States intends to introduce evidence that connects the relevant social media accounts, the aforementioned Gab account and a Telegram account[2], that directly connect these accounts to the defendant and demonstrate he is in fact the individual posting to these accounts. Likewise, the United States must prove that the Defendant transmitted the communication for the purpose of making a threat or knowing the communication would be viewed as a threat. To do so, the United States must present the full context of the Defendant's threat and the nature of his other communications at or around the time the threat was made. To allow the jury to determine whether or not a reasonable, objective person would view the Defendant's threat to the District Attorney as a true threat, they must be able to evaluate the threat in the context of the Defendant's other communications regarding the GDL's activities in Nashville. As the Supreme Court has articulated, "the statement must be deemed threatening by a reasonable listener who is familiar with the 'entire factual context' in which the statement occurs." *Counterman v. Colorado*, 600 U.S. 66, 113–14 (2023).

---

[2] While the charged threat was posted on the Gab platform, the defendant also posted the identical threat to his Telegram account.

a. <u>Detention Hearing – Exhibit 24:</u> At the same time the Defendant threatened the District Attorney about the arrest of his fellow GDL member, the Defendant posted the following to Telegram:



This post is proper background evidence as it has a causal, temporal or spatial connection with the charged offense. This particular post is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, and completes the story of the charged offense. The Defendant's only dispute with individuals in Nashville pertains to the arrest of his fellow GDL member that led him to threaten the District Attorney. This post places the Defendant's threat in context and provides the jury with necessary context to do their job as the factfinder and determine whether the message regarding lynching the District Attorney were in fact a true threat. The Defendant is not entitled to a sanitized recounting of the facts and this post places the threat in the appropriate context and is admissible as res gestae evidence.

b. <u>Third Party Responses to Bloyed's Social Media Posts:</u> At the same time the Defendant threatened the District Attorney about the arrest of his fellow GDL member, the Defendant was engaging with other GDL members on various social media accounts. The Defendant has requested that the United States redact responses to the Defendant's posts by third parties, but the United States asserts that the Defendant's posts and responses from his associates provide necessary context for the jury to consider when determining whether the

9

Case 3:24-cr-00189   Document 63   Filed 04/21/25   Page 9 of 14 PageID #: 460

Defendant's threat to the District Attorney was in fact a true threat. The psost and responses the Defendant wants redacted are below:





Again, these posts and responses are proper background evidence as they all possess a causal, temporal or spatial connection with the charged offense. The responses to the Defendant's posts regarding the arrest of a GDL associate in Nashville are relevant as they place the Defendant's posts and his threats in the appropriate context. While the Defendant is repeatedly advocating for violent action in response to the arrest of his associate, it is relevant that his associates are amplifying and similarly encouraging violence. These posts and responses place the Defendant's actions in the appropriate context and will allow the jury to evaluate the Defendant's threat to determine whether

10

or not is a true threat. Accordingly, while the Defendant's posts in each of these proposed exhibits is admissible, the responses to the Defendant's posts are likewise admissible.

      c.    <u>"Doxxing Posts" and Posts Related to the Defendant's Animus Towards D.B.:</u> The Defendant also objects to the introduction of Exhibits 8, 9, and 18, which are screenshots of Gab posts by Mr. Bloyed from July 20, 2024, where he posts, "Hey Nashville ZOG [f******], you might find D[] if you check his dads house." In Exhibit 18, the Defendant has posted a similar Google Maps image, this time with the text, "D[], hello there." Defendant's Motion describes these posts as "examples of doxxing, where someone publishes another person's private information as an act of revenge." (*Id.* at 15-16.) The Defendant also objects to Exhibits 16, 20, and 28, which all outline animus towards D.B., the individual allegedly involved in a physical altercation with a member of the Goyim Defense League, including one where the Defendant, when referencing D.B., says, "[w]ell he's fucked. Put him on the rope list." (*Id.* at 17-18.)

All of these posts are appropriate background evidence as they each have a causal, temporal or spatial connection with the charged offense. These particular posts are all either a prelude to the charged offense, directly probative of the charged offense, arise from the same events as the charged offense, form an integral part of a witness's testimony, and complete the story of the charged offense. The animus demonstrated by the Defendant goes directly to his frame of mind and intent when making the threatening communication to the District Attorney. These posts allow the jury to better understand the Defendant's frame of mind when he committed the alleged criminal conduct and provide appropriate context for the jury to evaluate whether a reasonable, objective person would view the Defendant's post about lynching the District Attorney as a true threat. The exclusion of these posts would be sanitizing the facts surrounding the Defendant's criminal conduct and the

11

Case 3:24-cr-00189   Document 63   Filed 04/21/25   Page 11 of 14 PageID #: 462

Defendant is not entitled to a sanitized recounting of the facts. Accordingly, the United States asks the Court to allow the United States to present these social media posts at trial.

VIII. **The November 23, 2024 Incident is Appropriate Rule 404(b) Evidence**

In November 2023, officers with the Waxahachie Police Department encountered the defendant outside the Waxahachie Civic Center while the defendant was passing out GDL flyers. According to the supervising officer at the scene, a police lieutenant, the defendant was asked to leave the area and subsequently called the Waxahachie Police Department to file a complaint against the Lieutenant. Waxahachie Police Department dispatchers ran the phone number used to make the complaint, as is their policy when individuals leave messages, and identified the defendant as the caller and the individual who was asked to stop passing out antisemitic flyers.

On or about November 4, 2023, the user of the Gab Account that threatened the Nashville District Attorney made the following post describing his encounter with the Waxahachie officers that day:

> I just got ran out of the outside sidewalk entrance to the Waxahachie Texas convention center, I was outside the whole time, I never went inside, and still I got ran off by three ZOG bots telling me "you are detained, and if you do not leave you are under arrest for trespassing" and we will take your firearm and take you to jail. For handing out political/religious flyers on a city owned event center outside sidewalk at a gun show where everyone is armed. I got it all on my body cam and their body cams were on also. So I left and I drove straight to the Police station and dropped off a copy of the "Flyering case law" to the police chief and a few flyers and then I went to the town square/County court house and flyered every car in that Square for Waxahachie/Ellis county and for blocks around it. Fuck you Waxahachie and Ellis county! The 3 stooge Waxahachie City cops are listed below. We have two choices in how to deal with these clowns in the near future: Retraining or Rope. I would let two of them go for "retraining", the other (Lieutenant XXXX[3]) goes 1/2 way on the Turner rope list and gets one more shot at being worth saving.
>
> Time about 10:30 -11:00 PM 11/4/23
>
> PD non emergency line: 469-309-XXXX

---

[3] The use of "XXXX" is done to protect the identity of involved law enforcement officers. The defendant publicly shared the names of all three law enforcement officers in his Gab post.

Officers were:

Sargent X. XXXX - Retraining.

XXXX XXXX, Lieutenant - Half way to the rope (you've got one more chance nigger)[4]

The younger officer, (I'm still getting his name) - retraining.

XXX XXXXX - Police Chief - not sure about him yet. I left him a voice mail, told him I am going back tomorrow and we can do it all again. Phone: (469) 309-XXXX

The FBI obtained a copy of the voicemail message left by the defendant with the Waxahachie Police Department on November 4, 2023, and it mirrors the events described in the November 4, 2023, post shared by the user of the Gab Account and discusses the same officers listed in the post.

The United States intends to introduce evidence of this encounter as it demonstrates that in the months before the criminal conduct in this case, the defendant controlled the social media account used to commit the crime, was associated with GDL, and is prelude to the charged offense. Here, the United States expect law enforcement witnesses to discuss that this posting, among other evidence, which led to the determination that the defendant was the individual operating the social media account used to transmit the threat in interstate commerce.

In the alternative, the United States intends to introduce evidence related to this incident as permissible 404(b) evidence as it demonstrates opportunity, intent, plan, knowledge, absence of mistake, or lack of accident. At trial, the United States can prevail if it shows that the threating communication to the District Attorney was made for the purpose of furthering some goal through the use of intimidation. *See, e.g., United States v. Alkhabaz*, 104 F.3d 1492, 1495 (6th Cir. 1997), abrogated in part by *Elonis,* — U.S. —, 135 S. Ct. 2001, 192 L.Ed.2d 1 (2015), (using the objective person standard in determining whether a statement constitutes a true threat); *see also United States v. Jeffries*, 692 F.3d 473, 477-81 (6th Cir. 2012), abrogated in part by *Elonis,* — U.S. —, 135 S. Ct.

---

[4] The lieutenant identified by the defendant in his Gab post is African American.

2001, 192 L.Ed.2d 1 (2015), (same); *Houston*, 683 F. App'x at 438-39 (same). In November 2023, just as he did in July 2024, the Defendant threatened another individual with "the rope" in an effort to intimidate them into taking a particular course of action. In November 2023, the Defendant threatened the police lieutenant with the intent to get him to modify his behavior and allow him to pass out flyers. Similarly, in July 2024, the Defendant made an identical threat to the District Attorney with the intent of intimidating the District Attorney to drop charges against the arrested GDL member. Accordingly, this evidence should be admitted because it is not *unfairly* prejudicial, but a limiting instruction as to the proper use and scope of this evidence may be appropriate.

## CONCLUSION

For the foregoing reasons, the United States submits this notice of its intent to offer certain evidence as res gestae evidence or, in the alternative pursuant to Rule 404(b).

Respectfully submitted,

ROBERT E. MCGUIRE
Acting United States Attorney
Middle District of Tennessee

By: */s/ Joshua A. Kurtzman*
JOSHUA A. KURTZMAN
Assistant United States Attorneys
719 Church Street – Suite 3300
Nashville, Tennessee 37203-3870
Telephone: 615-401-6617